FILED
NOV 10 2025
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

Vesper and Carolyn Lewis,

      Plaintiffs

v.                                                Civil Action No. 2:25-CV-00665

The City of Richwood and
West Virginia Department of Homeland Security,
    Division of Emergency Management

      Defendants

## COMPLAINT

COME NOW THE PLAINTIFFS Vesper and Carolyn Lewis, through their attorney Michael T. Clifford, and states as follows:

### PARTIES

1. Plaintiffs VESPER LEWIS AND CAROLYNYN LEWIS are, and at all times relevant to this complaint were, residents of Bullock County, Georgia (hereinafter "Plaintiffs LEWIS"). Plaintiffs LEWIS were, and remain, the owners of a home and/or property located at 87 Green Street, Richwood, West Virginia (hereinafter referred to as the "LEWIS property and/or impacted property.").

2. Defendant CITY OF RICHWOOD (hereinafter "Defendant CITY") was, and remains, a municipality located in Nicholas County, West Virginia. Defendant CITY's address is 6 White Avenue, Richwood, West Virginia.

3. Defendant WEST VIRGINIA DEPARTMENT OF HOMELAND SECURITY (hereinafter "Defendant STATE") was, and remains, an agency of the State of West Virginia and is located at 1 Virginia Street East, Charleston, West Virginia 25301. The current Cabinet Secretary is Douglas P. Buffington II, and its Director of the Division of Emergency Management is G. E. McCabe.

## JURISDICTION

4. Federal district courts have original jurisdiction over all civil actions that "aris[e] under the Constitution, laws, or treaties of the United States." 18 U.S.C. § 1331. This Court has jurisdiction in this matter because the parties reside in different states, and the claim value is more than $75,000. *See* 18 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

Paragraphs 1 through 4 are realleged and incorporated herein.

5. From October 9, 2010, up through the date of this filing, Plaintiffs LEWIS owned property located at 87 Green Street, Richwood, Nicolas County, West Virginia. Plaintiffs used this property as a second home and were present on the property off and on throughout the year for a total of approximately six months. Plaintiffs LEWIS also owned a home in Frankfort, Greenbrier County, West Virginia.

6. The National Flood Insurance Program (NFIP) was, and remains, a federal program administered by Federal Emergency Management Agency (FEMA) that provided flood insurance to property owners in participating communities, which agree to adopt and enforce floodplain management ordinances. The NFIP was established in 1968 to help communities prevent and recover from floods, offering policies for residential and non-

residential properties, though homeowners must meet specific requirements to be eligible. The NFIP made flood insurance available to property owners, renters, and businesses that may not have been covered by standard homeowners or renters' policies.

7. Defendant CITY participated in the NFIP. As a result, Defendant CITY had to adopt and enforce floodplain management ordinances that reduced flood risk.

8. In April 2016, Plaintiffs LEWIS paid flood insurance for the impacted property directly to FEMA pursuant to the NFIP. Their insurance carrier was State Farm Insurance located in Hinton, West Virginia.

9. On June 23, 2016, the town of Richwood, Nicholas County, West Virginia and the surrounding areas, experienced a devastating flood.

10. The flood destroyed Plaintiffs LEWIS' home located at 87 Green Street, Richwood, Nicholas County, West Virginia. They lost their home and all personal belongings as a result.

11. On June 25, 2016, a federal disaster declaration (DR-4273-WV) for severe storms, flooding, landslides, and mudslides in West Virginia was issued. The declaration covered the incident period of June 22 to 29, 2025. The declaration covered Nicholas County, West Virginia.

12. Plaintiffs LEWIS made appropriate applications for relief with (a) their respective flood insurance providers, (b) FEMA personnel assisting homeowners with both personal and real property losses, and (c) with Defendant CITY personnel.

13. Starting in July 2016 and continuing to the date of this complaint for damages, Plaintiffs LEWIS have diligently sought assistance from Defendant STATE and/or Defendant CITY but have received no relief.

14. On or about June 30, 2016, Plaintiffs LEWIS met with Defendant CITY officials to discuss the cleanup of their impacted property from the flooding. Defendant CITY officials told them that Annex was coordinating the cleanup. Annex told Plaintiffs LEWIS not to touch anything on the impacted property until FEMA representatives visited the property. Plaintiffs LEWIS also signed up for the FEMA loan program to raise their home and filled out a Hazard Mitigation Application with FEMA.

15. On or about July 1, 2016, State Farm Insurance, who held Plaintiffs' flood insurance policy, conducted an engineering survey on the impacted property to determine the possibility of raising the home above the floodplain. Plaintiffs LEWIS paid $2,626 for the engineering survey.

16. On or about July 15, 2016, FEMA representatives visited the impacted property. FEMA representatives reviewed FEMA programs and FEMA/Insurance paperwork with Plaintiffs LEWIS. The Plaintiffs completed paperwork to receive $3000 in emergency funding from FEMA.

17. In or about September 2016, Plaintiffs LEWIS met with Defendant CITY officials H.C. Spencer and Britt Butler to discuss FEMA's $250,000 loan program. The program offered flood victims a low interest loan up to $250,000 for use in rebuilding their homes. H.C. Spencer and Britt Butler advised the Plaintiffs not to take the loan because Defendant CITY would provide a new home above the floodplain. During this meeting, Plaintiffs LEWIS gave Defendant CITY officials Spender and Butler a copy of the engineering survey that recommended a new home built above the floodplain. Defendant CITY officials Spencer and Butler offered Plaintiffs the RISE West Virginia program.

18. During all their conversations with Defendant CITY officials, Plaintiffs Lewis were clear with them that the Richwood, West Virginia home was not their primary home at the time of the flood. In fact, Plaintiffs LEWIS told Defendant City officials that they owned a home in Greenbrier County, West Virginia, that they intended to sell so that they could move to Richwood, West Virginia, and retire to that community.

19. Because oof the above agreement with Defendant CITY, Plaintiffs LEWIS sold their home in Greenbrier County, West Virginia. This sale was in anticipation of their home in Nicholas County, West Virginia, rebuilt as promised by Defendant CITY officials. Defendants STATE and City were aware of the sale of property and encouraged the sale. Plaintiffs LEWIS had conversations with Defendant CITY employees, agent, and/or assigns H. C Spenser, Jeremiah Novak, Brett Butler, and Amy Dinato regarding (a) the agreement to rebuild and/or compensate Plaintiff LEWIS for their home located at 87 Green Street and (b) that Plaintiffs LEWIS would be selling a home in Greenbrier County, West Virginia in anticipation of using the home acquired through the Hazard Mitigation Grant application they had submitted, which was later approved by Defendants FEDERAL GOVERNMENT, STATE and City. Because of Defendant STATE and CITY, Plaintiffs LEWIS have been without a residence in West Virginia since the 2016 disaster. Prior to the disaster, Plaintiff LEWIS and their family had the quiet use and enjoyment of the property located at 87 Green Street, Richwood, WV; and this use and enjoyment has been negated by the actions of Defendants STATE and CITY.

20. In response to the devastating June 2016 floods,. West Virginia created the RISE program. The primary goal of RISE was to assist low-income residents in flood-affected counties, including Nicholas County, with the repair, replacement, or reconstruction of their homes.

The program received significant funding, including approximately $150 million from the United States Department of Housing and Urban Development (HUD) through Community Development Block Grants designated for disaster relief.

21. In or around November or December 2016, Plaintiffs LEWIS applied for assistance through the RISE West Virginia program.

22. In or about April 2017, Plaintiffs spoke with Defendant CITY officials HC Spencer and Jeremiah Novak on the telephone. During this conversation, Officials Spencer and Novak told the Plaintiffs to maintain flood insurance on the impacted property. Defendant CITY officials told Plaintiffs LEWIS they had to keep their flood insurance policy active although there was no home on the property. Defendant CITY officials stated that failure to do so could render them unable to obtain flood insurance on their rebuilt home. As of the filing of this complaint, Plaintiffs LEWIS have not received a house but have continued to pay yearly flood insurance with ever increasing yearly premiums.

23. From the Spring of 2017 through June 2018, Plaintiffs LEWIS stayed in communication with Defendant CITY officials on the status of the rebuilding of the impacted property.

24. In July 2018, Plaintiffs LEWIS spoke to Defendant STATE official Mike Wallace, who was employed by West Virginia Department of Homeland Security. Mr. Wallace informed the Plaintiffs that their home was approved for rebuilding. According to Mr. Wallace, Defendant STATE had sent the contracts for the rebuilding to Defendant CITY. As a result of FEMA and Defendant STATE approving their Hazard Mitigation Application, the Plaintiffs gave authority to Defendant CITY to demolish the damaged house at 87 Green Street, Richwood, West Virginia.

25. On or about August 23, 2018, Defendant STATE received a FEMA Project Approval Letter for hazard mitigation assistance to rebuild the impacted property. The Project Approval Letter named Defendant STATE as the contractor responsible for the funds approved by Defendant FEMA to rebuild the Plaintiffs' property. There was a 3-year performance period ending on August 3, 2021. Defendant CITY was the subrecipient responsible for the actual rebuilding of the impacted property and proper use of the allocated funds. Defendant STATE, as the contractor, had a duty to ensure that funds received from FEMA for hazard mitigation assistance, were properly used and the project timely completed.

26. In September 2018, Plaintiffs Lewis relied on Defendant STATE official Mike Wallace's statement that FEMA approved funds to rebuild their home, and the FEMA Project Approval letter, to have a survey done of the impacted property. The survey was necessary to make sure the rebuilt property was within the property boundaries. The Plaintiffs paid for this survey at a cost of $2,933.

27. On March 29, 2019, the West Virginia State Auditor issued a report on an 18-month investigation into the use of flood money by Defendant CITY and its officials. The Auditor's report found that Defendant CITY officials had misspent federal flood money intended for the 2016 flood.

28. On or about March 29, 2019, Former City of Richwood Mayor, Bob Henry Barber; former Richwood City Clerk, Abigail McClung; former Chief of Police, Lloyd Cogar; and former Richwood City Recorder, Christina Dremen, were charged with criminal offenses relating to their management and use of FEMA and West Virginia funds allocated for flood mitigation. On or about October 12, 2021, former Mayor Bob Henry Barber received a

sentenced of 1 to 10 years imprisonment after pleading guilty to obtaining money under false pretenses in relation to FEMA flood money.

29. On May 14, 2019, Defendant CITY signed the subrecipient award for the FEMA Project Approval letter for hazard mitigation reconstruction for the Plaintiffs' impacted property. According to the Project Approval Letter, AIG was to do the building and design phases of the project. As the subrecipient, Defendant CITY was responsible for managing the funds awarded for the project and ensuring its timely completion. Defendant STATE as the primary contractor had a duty to ensure proper spending and management of the funds, and timely completion of the project. Both Defendant CITY and Defendant STATE failed in their oversight responsibilities.

30. On or about April 14, 2020, Defendant CITY's funding from FEMA and state agencies for flood repair was put on hold.

31. In 2020, the Plaintiffs received a building permit from Defendant CITY to put in city water line, a telephone pole, and power lines at the impacted property. Plaintiffs purchased a camper for $23,000 to place on their property located at 87 Green Steet in Richwood so that they could continue to use the property while waiting for their home to be rebuilt.

32. In 2022, Plaintiffs LEWIS talked on the phone with Defendant STATE Official Hatfield. During this conversation, Defendant STATE told Plaintiffs LEWIS that their home was in the floodplain and that they were not rebuilding houses in the floodplain. No official documentation was provided to the Plaintiffs to confirm this information.

33. Throughout 2022, 2023, 2024, and 2025, Plaintiffs LEWIS maintained contact with Defendant CITY and Defendant STATE representatives concerning the rebuilding of their impacted property.

34. In May 2025, Plaintiffs LEWIS received a letter from Defendant CITY, referencing a letter Defendant CITY received from Defendant STATE. The letter stated that they did not qualify for the FEMA Mitigation Reconstruction Program because the impacted property was not their permanent residence. Despite previous approval for this program after Plaintiffs LEWIS informed Defendant City that their home in Richwood was not their permanent residence and nearly nine years after the June 23, 2016 flood, this was the first time Plaintiffs received official documentation that their impacted property was not going be rebuilt as promised.

## COUNT ONE
## (BREACH OF CONTRACT)

35. Plaintiff incorporates by reference as if fully set forth herein, each allegation contained in the paragraphs above.

36. Plaintiffs LEWIS had flood insurance at the time of the June 2016 disaster that destroyed their home located at 87 Green Street, Richwood, West Virginia. After the flood, Plaintiffs LEWIS learned about a low interest loan they could apply for through FEMA in the amount of $250,000. Plaintiffs LEWIS intended to take advantage of this loan opportunity and use the funds to rebuild their home at 87 Green Street. Plaintiffs LEWIS had incurred the expense of having engineering reports prepared to determine if they could effectively rebuild their home, subject to floodplain and other zoning requirements. Plaintiffs LEWIS, while in the process of completing the loan agreement just mentioned, and while Plaintiffs LEWIS were moving forward with an engineering report, were approached by Defendant CITY officials and told that Plaintiffs LEWIS were entitled to participate in the hazard mitigation plan to rebuild. Plaintiffs LEWIS was clear with Defendant CITY that 87 Green Street was not their permanent residence at the time of the flood. Defendant CITY  never

raised this as a potential issue. Instated, Defendant CITY subsequently contracted with Plaintiffs LEWIS as follows:

   a. Defendant CITY agreed to incur the expense of demolishing Plaintiffs LEWIS' house located at 87 Green Street,

   b. Defendant CITY would assist Plaintiff LEWIS in applying for a Hazard Mitigation Grant, which Plaintiffs LEWIS did, and

   c. FEMA and Defendants STATE and CITY, approved Plaintiffs LEWIS' Hazard Mitigation Grant and all of them represented to Plaintiffs LEWIS that their home would be rebuilt in accordance with the approved grant.

37. Plaintiffs LEWIS, because of the above agreement with Defendant CITY, sold a home Plaintiffs LEWIS had in Greenbrier County, West Virginia. This sale was in anticipation of having their home rebuilt in Nicholas County, West Virginia. Defendants STATE and CITY were aware of the sale of this property and encouraged the sale. Plaintiffs LEWIS had conversations with Defendant CITY employees, agents and/or assignees H. C Spencer, Jeremiah Novak, Brett Butler, and Amy Dinato regarding (a) the agreement to rebuild and/or compensate Plaintiffs LEWIS for their home located at 87 Green Street and (b) that Plaintiffs LEWIS would be selling a home in Greenbrier County, West Virginia in anticipation of rebuilding their home in Richwood, West Virginia, through the Hazard Mitigation Grant application, which was approved by FEMA and Defendants STATE and CITY. Because of Defendants STATE and CITY, Plaintiffs LEWIS have been without a residence in Richwood, West Virginia since the 2016 disaster. Prior to the disaster, Plaintiffs LEWIS and their family had the quiet use and enjoyment of the property located at 87 Green Street, Richwood, West Virginia. Defendants STATE and CITY interfered with and

prevented the use and enjoyment by their actions and/or inactions following the June 2016 flood to present.

38. In May 2025, Plaintiffs LEWIS received an undated letter from Defendant CITY stating they were not eligible for a home under the FEMA Mitigation Reconstruction Program because their Richwood home was not their primary residence. This letter also referred to a letter Defendant CITY received from Defendant STATE, which Defendant CITY attached to the letter it sent. These letters were inconsistent with prior statements and agreements made by FEMA and Defendants STATE and CITY—all of whom had previously approved funding for the construction of Plaintiffs Lewis' property at 87 Green Street, Richwood, West Virginia.

39. These letters also contradicted Defendants STATE and CITY's previous representations to Plaintiffs LEWIS and their handling of mitigation applications. Specifically, Defendants STATE and CITY have provided homes through the RISE and VOAD programs to Richwood property owners and these homes were not their primary residence at the time of the 2016 flood. Additionally, Defendants STATE and CITY never told Plaintiffs LEWIS from June 2016 through May 2025, that their home in Richwood, West Virgina, had to be their primary residence to qualify for hazard mitigation assistance. Defendants STATE and CITY acted arbitrarily and capriciously with respect to the residence requirement.

40. As a result of Defendants STATE and CITY failing to meet their written and oral commitments, Plaintiffs LEWIS have suffered mental, emotional, physical, and financial distress.

41. Defendants STATE and CITY, by their collective acts, or inaction, since the 2016 disaster/flood have failed to meet their obligation(s) to Plaintiffs LEWIS by: (a) arbitrarily

and capriciously denying Plaintiffs LEWIS the quiet enjoyment of their property by failing to deploy the resources granted to them under Plaintiff LEWIS' Hazard Mitigation Application that FEMA granted and that Defendants STATE and CITY singularly and collectively controlled to restore and/or replace Plaintiffs LEWIS' residence at 87 Green Street, Richwood, West Virginia, and (b) their actions, severely impacted the Plaintiffs' ability to restore and/or replace their residence at a price substantially lower than now available. Plaintiffs LEWIS, shortly after the disaster/flood, were able to get a low interest loan through FEMA and replace their residence at a cost of approximately $250,000. Because of the previously named Defendants' actions (or inaction) replacement costs now exceed $450,000. This increase impacts the ability of Plaintiffs LEWIS to restore/replace the property economically and financially.

## COUNT TWO
(Negligence)

42. Plaintiff incorporates by reference as if fully set forth herein, each allegation contained in the paragraphs above.

43. Defendants STATE negligently failed to oversee Defendant CITY under the Project Approval Letter for hazard mitigation reconstruction for Plaintiffs LEWIS' impacted property. As a result, Plaintiffs LEWIS' home was not built pursuant to FEMA's approved grant and Defendants STATE and CITY's oral and written representations.

44. Defendant STATE failed to take corrective action against Defendant CITY officials in clear face of recurrent and consistent negligent and reckless handling of FEMA approved funding, which contributed to Plaintiffs' impacted property not being rebuilt as promised.

45. Defendants STATE and CITY negligently, intentionally, and knowingly interfered in Plaintiffs LEWIS's attempts to secure funding to rebuild the impacted property through a low-interest loan offered by FEMA. Instead, they told Plaintiffs LEWIS not to pursue the loan and promised to rebuild their home for them. Instead of rebuilding their home, Defendants STATE and CITY failed to use the FEMA funding allocated for the rebuilding of Plaintiffs LEWIS's impacted property, failed to complete timely hazard mitigation as a result of the 2016 flood and as promised in the Project Approval Letter, and then denied them funding to rebuild the impacted property without due consideration of the facts and circumstances of the promises made to Plaintiffs which contributed significantly to Plaintiffs LEWIS's losses.

46. The Defendants STATE and CITY failed to enforce key terms of the Project Approval letter, including requiring the rebuilding of Plaintiffs LEWIS' property during the designated period, which contributed to Plaintiffs' losses.

47. Defendant STATE negligently failed to hold Defendant CITY to the standards and guidelines of the Project Approval Letter.

48. As a result of the foregoing, Plaintiffs LEWIS have suffered the loss of their home, financial loss, pain and suffering, and severe psychological and emotional distress, for which Plaintiffs are entitled to damages.

## COUNT THREE
## (NEGLIGENT MISRPRESENTATION)

49. The Defendants STATE and CITY, both falsely represented to Plaintiffs LEWIS that their home located 87 Green Street, Richwood, West Virginia, would be rebuilt with money received from FEMA and the State of West Virginia. Defendants collectively had a duty of care with respect to Plaintiffs in their roles as state and city agencies.

50. In September of 2016, Defendant CITY officials told Plaintiffs LEWIS that the City of Richwood would rebuild their home and discouraged them from applying for a $250,000 low interest loan through FEMA. In reliance on those representations, Plaintiffs did not pursue the loan, which would have allowed them to rebuild the impacted property. At no time after these representations did Defendant CITY inform the Plaintiffs that their approval for rebuilding was subject to change. The Plaintiffs relied upon the representations of Defendant CITY officials to their detriment and lost the ability to pursue other government sources for funds such as the $250,000 low interest loan. Because of their reliance on Defendant CITY, Plaintiffs cost to rebuild their home has gone up exponentially from $250,000 in the months following the flood to approximately $500,000 today.

51. Defendant STATE officials also told Plaintiffs LEWIS that their home was approved for rebuilding. In reliance on this representation, Plaintiffs LEWIS agreed to the demolition of the buildings on the impacted property. Defendant STATE never informed the Plaintiffs that approval to rebuild their home under the hazard mitigation program was subject to change nine years after the flood and six years after the signing of the Project Approval Letter. As a result of this failure, Plaintiffs relied to their determinate on the statements of Defendant STATE that funding was available and approved to rebuild their home.

52. Plaintiffs LEWIS justifiably relied on the representations of the Defendants CITY and STATE. These Defendants managed the funds for approved projects, including Plaintiffs LEWIS' home, and both signed the Project Approval Letter for Plaintiffs' home. As a result of their justifiable reliance on Defendants CITY and STATE, Plaintiffs LEWIS have incurred monetary damages to maintain the utilities and flood insurance on the impacted property, have lost other sources of funding to rebuild the impacted property, and continue to suffer loss of enjoyment of the impacted property.

53. Defendants CITY and STATE informed the Plaintiffs after the period for work on their impacted property had expired, that they were no longer rebuilding homes in the floodplain. However, Defendants CITY and STATE provided no official documentation. The impacted property had been in the same location since before the 2016 flood and when the Project Approval Letter was signed. From June 2016 through sometime in 2022, Defendants CITY and STATE never told Plaintiffs LEWIS that they were not rebuilding homes in the floodplain and in fact, other homes were rebuilt in the floodplain.

54. Defendants STATE and CITY told Plaintiffs LEWIS in May 2025 by written correspondence that their home did not qualify for rebuilding assistance because it was not their primary residence. Again, at no time were Plaintiffs LEWIS made aware of this requirement when the Project Approval Letter was finalized in 2019. In fact, Plaintiffs LEWIS were clear with Defendant STATE and Defendant CITY officials in 2016 that their Richwood, West Virginia home was not their permanent residence at the time of the flood. Plaintiffs LEWIS relied, to their detriment, on the Defendants CITY and STATE's representations both orally and written through the Project Approval Letter that they would rebuild Plaintiffs LEWIS' home.

55. As a result of their justifiable reliance on DEFEDANTS CITY and STATE, Plaintiffs LEWIS have suffered significant monetary loss, emotional and mental distress, and loss of enjoyment of their property.

## COUNT FOUR
### (Intentional Infliction of Emotional Distress)

56. Plaintiff incorporates by reference as if fully set forth herein, each allegation contained in the paragraphs above.

57. Defendants CITY and STATE intentionally denied Plaintiffs LEWIS a proper and necessary home.

**WHEREFORE**, Plaintiffs LEWIS requests judgment as follows:

A. Compensatory damages in an amount to be determined by this Court as adequate for financial losses, pain, and suffering but no less than $500,000.

B. Costs incurred by Plaintiff, including pre-judgment and post-judgment interest.

C. Compensatory damages in a yet undetermined amount, jointly and severally, against all Defendants, including damages for severe emotional distress; and

D. Such other and further relief as the Court deems just and proper.

Plaintiffs request a jury trial.

Vesper and Carol Lewis
By Counsel:

Michael T. Clifford (WVSB #750)
100 Capitol Street
Security Building, Suite 400
Charleston, WV 25301
304-720-7660
304-720-7753 facsimile
mclifherd@aol.com

## CERTIFICATE OF SERVICE

I, Michael T. Clifford, do hereby certify that I served a true copy of the foregoing **COMPLAINT** upon all parties by electronic service through the Court's e-filing system.

*/s/ Michael T. Clifford*

Michael T. Clifford (WVSB #750)
100 Capitol Street
Security Building, Suite 400
Charleston, WV 25301
304-720-7660
304-720-7753 facsimile
mclifherd@aol.com